**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| DARRYL MOORE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-cv-00179-NCC |
| | ) | |
| CINDY GRIFFITH,[1] | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 5). After reviewing the case, the Court has determined that Petitioner is not entitled to relief. As a result, the Court will **DENY** the Petition and **DISMISS** the case.

**I. BACKGROUND**

On July 8, 2010, a jury found Petitioner guilty of second-degree murder (Count I) and armed criminal action (Count II) (Ex. D at 4). The trial court sentenced Petitioner to three years' imprisonment for the armed criminal action count and life imprisonment for the second-degree murder count in the custody of the Missouri Department of Corrections, to be served concurrently (*Id.* at 75-78).

Petitioner filed a direct appeal raising two claims:

(1) The trial court erred when it refused to grant a writ of body attachment against Lamarkis Cowan because there was sufficient evidence showing both that Mr. Cowan initially obeyed a defense subpoena and that he was a material defense witness; and

---
[1] Petitioner is currently incarcerated at Potosi Correctional Center in Mineral Point, Missouri. Cindy Griffith is the Warden and proper party respondent. *See* 28 U.S.C. § 2254, Rule 2(a).

> (2) The trial court erred when it overruled Petitioner's motions for judgment of acquittal at the close of the State's evidence because there is reasonable doubt that Petitioner operated the .45 caliber automatic handgun that fired the bullets causing the downward-tracking fatal wounds to the victim's body because of Petitioner's short height and obvious physical disability.

(Ex. H). The Missouri Court of Appeals for the Eastern District, finding no error of law, affirmed the judgment (Ex. L).

On June 11, 2012, Petitioner filed a *pro se* motion for post-conviction relief (Ex. M at 5). On October 11, 2012, with the assistance of counsel, Petitioner filed an amended motion for post-conviction relief (*Id.* at 4). On July 26, 2013, without holding an evidentiary hearing, the motion court denied Petitioner's amended motion (*Id.* at 58-62). On September 4, 2013, Petitioner filed a notice of appeal (*Id.* at 3) and, on December 6, 2013, with the assistance of counsel, submitted a brief in support of his appeal raising the following two grounds for relief:

> (1) Trial counsel failed to (a) secure Mr. Lamarkis Cowan's testimony by endorsing and validly subpoenaing him; and (b) properly request a writ of body attachment for Mr. Cowan; and
>
> (2) Trial counsel failed to object and request a mistrial when the State argued in closing, "Now think about what it would be like to watch . . . someone shoot your son in the head."

(Ex. N). On April 8, 2014, the Missouri Court of Appeals for the Eastern District affirmed the circuit court's denial of the motion (Ex. P).

On January 23, 2015, Petitioner filed the instant Section 2254 Petition in which he raises the following four grounds for relief:

> (1) The trial court erred in refusing to issue a writ of body attachment against defense witness Lamarkis Cowan, compelling him to testify, because there was sufficient evidence showing that he was properly subpoenaed to testify (Doc. 1-1 at 2);
>
> (2) The trial court erred when it overruled Petitioner's motions for judgment of acquittal at the close of the State's evidence because there is reasonable doubt that Petitioner operated the .45 caliber automatic handgun that fired the bullets causing the downward-tracking fatal wounds to the victim's body because of Petitioner's short height and

obvious physical disability (*Id.* at 20);

(3) Trial counsel was ineffective for failing to (a) secure Cowan's testimony by endorsing and validly subpoenaing him; and (b) properly request a writ of body attachment due to alleged deficiencies with the subpoena return (*Id.* at 24); and

(4) Trial counsel was ineffective for failing to object and request a mistrial when the State argued in closing, "Now think about what it would be like to watch . . . someone shoot your son in the head" (*Id.* at 37).

## II. DISCUSSION

"In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).

3

**A. Ground 1: Writ of Body Attachment**

In Ground 1, Petitioner argues that the trial court erred in refusing to issue a writ of body attachment against defense witness Lamarkis Cowan ("Cowan"), compelling him to testify, because there was sufficient evidence showing that he was properly subpoenaed to testify (Doc. 1-1 at 2). Petitioner asserts that Cowan would have testified that his back was against a wall during the underlying fight and that if his back was against a wall then the fight occurred in the gangway and the view of the victim's father, an eyewitness, would have been impeded (*Id.* at 18). In support of his assertion, Petitioner provides two pages of Cowan's deposition testimony indicating that he was against a wall during the fight (*Id.* at 14-17).

Ground 1 is not cognizable in a federal habeas corpus action. Under 28 U.S.C. § 2254(a), a district court may only entertain a petition for writ of habeas corpus if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." "[A] federal court may not re-examine a state court's interpretation and application of state law." *Nunley v. Bowersox*, 784 F.3d 468, 471 (8th Cir. 2015) (quoting *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994)) (internal quotation marks omitted). The appellate court determined on direct appeal that the trial court did not have the authority to enter a writ of body attachment under Missouri law because the record did not establish that Cowan failed to obey a validly executed subpoena (Ex. L at 7). The appellate court further found that even if the subpoena had been validly executed, Petitioner failed to show that Cowan's testimony was material or necessary to his defense (*Id.* at 7-8). Here, the Missouri state court interpreted and applied Missouri law to the issue of whether a writ of body attachment could have properly issued and this Court may not re-examine this interpretation and application.

To the extent Petitioner's Sixth Amendment due process right to present witnesses in his defense is implicated, the Court finds Cowan's testimony not to be material and favorable to Petitioner's defense such that his Sixth Amendment due process rights were violated. The Sixth Amendment provides, in relevant part, that, "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor[.]" "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988). A defendant is deprived of this right when he is arbitrarily deprived of testimony that would have been "both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). "The omission must be evaluated in the context of the entire record." *Id.* at 868 (quoting *United States v. Agurs*, 427 U.S. 97, 112-113 (1976)) (internal quotation marks omitted). To be considered material, a defendant must show that the evidence might have affected the outcome of the trial. *Id.*

The Court finds the appellate court's decision was not contrary to clearly established Supreme Court precedent or based on an unreasonable factual determination. Although the appellate court did not address this issue in the context of the Sixth Amendment, the appellate court nevertheless found that Petitioner failed to establish that Cowan's testimony was material or necessary to his defense (Ex. L at 7). The appellate court determined that Cowan's testimony would not have provided Petitioner with a complete defense (*Id.*). The appellate court indicated that while Cowan's testimony would have been that his back was against a wall when he was being beaten, this testimony did not establish that the fight took place in the gangway, as Petitioner suggested, because the wall could have been at the front of the house, consistent with the eyewitness testimony of two individuals (*Id.*). Even if the testimony impacted the credibility of one eyewitness whose view may have been blocked if the fight took place in the gangway, the

5

appellate court found the other witness's testimony that he saw Petitioner fire the gun would not have been affected by Cowan's testimony (*Id.*). Therefore, because Petitioner cannot establish that Cowan's testimony would have affected the outcome of his trial, the Court finds that a Sixth Amendment violation did not occur. Accordingly, Ground 1 is denied.

**B. Ground 2: Motions for Judgment of Acquittal**

Second, Petitioner asserts that the trial court erred when it overruled Petitioner's motions for judgment of acquittal at the close of the State's evidence because there is reasonable doubt that Petitioner operated the .45 caliber automatic handgun that fired the bullets causing the downward-tracking fatal wounds to the victim's body because of Petitioner's short height and obvious physical disability (Doc. 1-1 at 20). Specifically, Petitioner argues that at the time he was charged with the underlying crimes, he was 5'1" and 125 pounds (*Id.* at 22). For a person of his size, Petitioner asserts that the use of a .45 caliber automatic handgun would likely have resulted in that person jerking and missing his or her intended target and not delivering the two fatal shots to the victim (*Id.*). Further, Petitioner argues that reasonable jurists would have expected the victim's wounds to have tracked upward because the victim was 5'11", 10 inches taller than the Petitioner (*Id.*). Petitioner also asserts that it would have been extremely difficult for him to operate the gun because it takes two hands to chamber a round and it is best to use a two-hand grip when shooting at a target but Petitioner does not have a left hand and is missing the lower part of his left arm (*Id.* at 21).

The appellate court determined that the State's evidence was sufficient to support convictions for second-degree murder and armed criminal action (Ex. L at 11). In making this determination, the appellate court reasoned that:

> This evidence, which was presented to the jury, may have permitted a jury to find reasonable doubt, but it did not so mandate. Officer Menendez testified that one could

6

> both load and shoot a .45 caliber pistol with one hand. *See State v. White*, 247 S.W.3d 557, 563-64 (Mo. App. E.D. 2007) ("[s]uch issues as the weight of the evidence, credibility of the witnesses and resolution of conflicts in the testimony are matters for the jury, not matters for appellate review"). Further, the record did not conclusively show that [Petitioner] was 5'1"; rather, Sanders [(the victim's father and an eyewitness)] testified [Petitioner] was as tall as 5'6" and Detective Sabin testified that he was as tall as 5'4". Although the charging document listed [Petitioner's] height as 5'1", this number was based on his juvenile record. When faced with conflicting evidence, the jury may choose what to believe and what weight to assign the evidence, and we will not second guess those judgments. *Id.*
>
> The State here presented sufficient evidence for the jury to have found beyond a reasonable doubt that [Petitioner] knowingly caused Victim's death or knowingly caused Victim serious[] physical injury resulting in his death, while using a dangerous instrument. Sanders testified that he witnessed, while standing at the front of the gangway, [Petitioner] and Victim alone in the gangway, and then Victim being shot. Jenkins [(another eyewitness)] testified that he witnessed, while standing at the back of the gangway, [Petitioner] fire a gun at Victim. Sanders further testified that he later saw [Petitioner] display a handgun. The testimony of these two eyewitnesses was sufficient to establish that [Petitioner] shot Victim. *State v. Williams*, 277 S.W.3d 848, 853 (Mo. App. E.D. 2009) (eyewitness testimony alone can be sufficient evidence to support conviction).
>
> Moreover, intent may be proven from inferences drawn from the surrounding circumstances because direct proof of a defendant's intent is rarely available. *State v. Beam*, 334 S.W.3d 699, 707 (Mo. App. E.D. 2011). The jury could infer from [Petitioner] firing a gun at Victim that it was his intent to kill or inflict serious bodily harm.

(Ex. L at 9-10).

"[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is . . . whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 339 n. 16. Under Missouri law, "A person commits the offense of murder in the second degree if he or she knowingly causes the death of another person or, with purpose of causing serious physical injury to another person, causes the death of another person."

7

Mo. Rev. Stat. § 565.021.1. A person commits the offense of armed criminal action if he commits any felony with the aid of a dangerous instrument. Mo. Rev. Stat. § 571.015.

The appellate court's decision is not contrary to or an unreasonable application of federal law. Although the appellate court did not cite *Jackson* directly, applying analogous state law, the appellate court considered whether sufficient evidence existed from which a reasonable trier of fact could find beyond a reasonable doubt that Petitioner knowingly cause the victim's death or knowingly caused the victim serious physical injury resulting in his death, while using a dangerous instrument. In so-doing, the appellate court noted the allegedly exculpatory evidence was before the jury and correctly found that it is the jury's purview to weigh the evidence and make any credibility determination. The appellate court further found that the State presented sufficient evidence from which a jury could reasonably find Petitioner guilty beyond a reasonable doubt on these charges because two eyewitnesses identified Petitioner as the shooter. Accordingly, Ground 2 is denied.

## C. Ineffective Assistance of Trial Counsel

Next, Petitioner raises the following two grounds of ineffective assistance of counsel: (1) trial counsel was ineffective for failing to (a) secure Cowan's testimony by endorsing and validly subpoenaing him; and (b) properly request a writ of body attachment due to alleged deficiencies with the subpoena return; and (2) trial counsel was ineffective for failing to object and request a mistrial when the State argued in closing, "Now think about what it would be like to watch . . . someone shoot your son in the head."

In order to state a claim of ineffective assistance of trial counsel, Petitioner must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient representation

8

means counsel's conduct fell below the conduct of a reasonably competent attorney. *Id.* To establish prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotations and citations omitted).

### 1. Ground 3: Subpoena and Writ of Body Attachment

In Ground 3, Petitioner asserts that trial counsel was ineffective for failing to (a) secure Cowan's testimony by endorsing and validly subpoenaing him; and (b) properly request a writ of body attachment due to alleged deficiencies with the subpoena return (Doc. 1-1 at 24). As previously noted, Petitioner argues that if Cowan were permitted to testify that his testimony would have impeached the eyewitness testimony of the victim's father (*Id.*).

The motion court found Petitioner's claim without merit as the "failure to call an impeachment witness does not generally warrant relief for ineffective assistance of counsel because the facts even if true [sic] do not establish a defense" (Ex. M at 60). Further, the appellate court on direct appeal determined that the testimony of Cowan would not have provided a defense (*Id.* at 61). The post-conviction appellate court refused to reconsider the claim on post-conviction appeal because the court had decided the underlying issue on direct appeal (Ex. P at 9). In doing so, the court noted that "this court has already determined that Mr. Cowan's testimony would *not* establish that the fight blocked [the victim's father's] view of the shooting" (*Id.*).

The Missouri Courts' decisions were not contrary to federal law. Although the post-

conviction appellate court did not address Petitioner's claim on the merits or apply *Strickland*, both state courts determined, relying on the appellate court's decision on direct appeal, that the underlying issue was meritless. This Court, as addressed in more detail above, found the appellate court's decision on direct appeal not contrary to, or an unreasonable application, of federal law. Counsel cannot be found to be ineffective for failing to advance a meritless issue. *Thomas v. United States*, 951 F.2d 902, 904 (8th Cir. 1991) (counsel not ineffective for failure to raise meritless issue). Accordingly, Ground 3 is denied.

### 2. Ground 4: Statement during Closing Argument

In Ground 4, Petitioner asserts that trial counsel was ineffective for failing to object and request a mistrial when the State argued in closing, "Now think about what it would be like to watch . . . someone shoot your son in the head" (Doc. 1-1 at 37). Specifically, Petitioner argues that an objection by trial counsel would have been meritorious because the State's statement during closing argument was an improper personalization (*Id.* at 38).

During closing argument, defense counsel argued that the victim's father was not a reliable witness. For example, defense counsel stated:

> [The victim's father] picked out - - maybe he formed a belief that [Petitioner] did it. We know from his own testimony he didn't like [Petitioner]. He didn't like [Petitioner] hanging out with his son. Maybe he picked him out because he was the last person in the gangway to come out that he saw. . . . Whether he formed that belief or not, based upon what he saw, I don't think he did. It's very dangerous to have a father come in and testify as to the details of the death of his son. From a guy - - and then pinning it on a guy who assaulted him six months earlier, a guy who happened to be there in the gangway, and a guy who he didn't like.

(Ex. C at 129-130). He further asserted:

> A father sees his son shot. He is going to wait until the person who did it turns, so he can identify the face. He didn't wait. He didn't wait. He said what he saw was a silhouette. Did you see the person turn? No. Did you see the person put the gun away. No. He did not wait. He saw the back of the individual. He claims he dials 911. After everybody is out of the gangway wouldn't he go back and check on his son? Wouldn't he? He didn't testify to that. But wouldn't he go back and check on his son? Wouldn't he observe the

10

condition of the body? Wouldn't a father check on the condition of his son after they [sic] were shot? Hell, no.

(*Id.* at 131-132).

After defense counsel delivered its closing argument, the State had its opportunity to deliver its closing. The State argued:

> I want to go through the things that [trial counsel] talked about. But the first thing I want to talk to everybody about is things that people remember. Things that are etched in people's heads. For some people, all right, let's talk about some good things. Okay? For some people maybe Cardinals winning the World Series in 2006, that was a good moment for a lot of serious baseball fans. And we have got some bad stuff, World Trade Center bombing, September 11th, all right? For some of the older people the JFK assassination, things that are etched in your head you don't forget. All right
>
> *Now think about what it would be like to watch your - - someone shoot your son in the head.* What would that do? What would that do? What would that image be? Watching those towers fall on September 11th, that's burned into my head. I can see it right now, today, in my head. What do you think [the victim's father] can see in his head? What do you think he can see when he goes to sleep? I['ll] tell you what he sees. He sees that man right there shooting his son. That's what he sees.

(*Id.* at 137-138) (emphasis added). Trial counsel did not object to these statements.

The motion court determined that this claim lacked merit because the State's statement during closing argument was not improper personalization as "the prosecutor did not ask the jury to place themselves in the place of the victim nor did he suggest danger to the members of the jury" (Ex. M at 62). The motion court further found that Petitioner was not prejudiced by the statement because the statement did not have "any effect on the outcome of the case in light of the evidence against movant and the fact that the jury found [Petitioner] guilty of second degree rather than first degree murder" (*Id.*). The post-conviction appellate court found, upon review of the trial record, that trial counsel was not ineffective for failing to object to the statement by the State (Ex. P at 11). The post-conviction appellate court determined that an objection to the statement would not have been meritorious because, in context, the State's statements, including

the one at issue, were clearly in rebuttal to trial counsel's assertion that the eyewitness testimony of the victim's father was unreliable (Ex. P at 10-11). The post-conviction appellate court further found that Petitioner was not prejudiced by the statement because the testimony of two eyewitnesses established that Petitioner shot the victim (*Id.* at 12).

The Missouri Courts reasonably applied *Strickland*. The State's statement was not improper personalization. *Boyd v. Steele*, No. 4:13CV257 CDP, 2016 WL 880389, at *3 (E.D. Mo. Mar. 8, 2016) ("Improper personalization occurs when the prosecutor asks the jurors during closing argument to place themselves in the place of a party or victim, or suggests personal danger to the jurors or their families if the defendant were to be acquitted."). The State did not ask jurors to place themselves in the place of a party to the action or the victim. Nor did the State suggest that the jurors or their families would be in personal danger if the Petitioner were acquitted. Instead, the State properly rebutted defense counsel's assertions that the victim's father was an unreliable witness. Further, even if the Court were to find that the statement was improper personalization, trial counsel's decision not to object is reasonable trial strategy. "The court does not 'second-guess' trial strategy or rely on the benefit of hindsight and the attorney's conduct must fall below an objective standard of reasonableness to be found ineffective." *Williams v. United States*, 452 F.3d 1009, 1013 (8th Cir. 2006) (internal citation omitted). *See also Dansby v. Hobbs*, 766 F.3d 809, 836 (8th Cir. 2014) (finding it reasonable trial strategy not to emphasize the comments further by objecting to them when the comments at issue made up only eight lines of the closing argument). Finally, in light of the significant evidence of his guilt including the testimony of two eyewitnesses, the Court cannot find that, but for trial counsel's alleged error, the outcome of Petitioner's trial would have been any different. Accordingly, Ground 4 is denied.

## III. CONCLUSION

For the reasons stated above, the Court finds that Petitioner is not entitled to federal habeas relief. Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Khaimov v. Crist*, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). Thus, the court will not issue a certificate of appealability. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**, and this action is **DISMISSED.**

**IT IS FURTHER ORDERED** that a certificate of appealability will not be issued. 28 U.S.C. § 2253.

Dated this 1st day of February, 2018.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE